## CHICAGO, R. I. & P. RY. CO. v. ASHLOCK.

No. 1208.    Opinion Filed January 21, 1913.

(129 Pac. 726.)

1.  **MASTER AND SERVANT—Injury to Servant—Failure to Furnish Competent Assistants.** Where the negligence complained of in a suit for personal injuries is "failure of defendant to furnish plaintiff sufficient competent assistants to enable him to perform the work with safety," the question presented is for the determination of the jury, where there is any evidence, or inferences to be legitimately drawn from the evidence, viewed in the light of the situation and circumstances of the parties and the work, tending to show that defendant failed to perform its duty in this regard, and that such failure produced the injury, and that such a result might have been reasonably anticipated.

2.  **APPEAL AND ERROR—Review—Verdict—Sufficiency of Evidence.** The verdict of a jury upon questions properly submitted to it will not be disturbed on appeal, where there is any substantial evidence supporting it.

(Syllabus by Brewer, C.)

*Error from District Court, Pottawatomie County;*
*W. N. Maben, Judge.*

Action by J. F. Ashlock against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

C. O. Blake, Thos. R. Beman, and J. H. Woods, for plaintiff in error.

H. H. Smith and W. T. Williams, for defendant in error.

Opinion by BREWER, C. This was an action by plaintiff Ashlock against the defendant, the Chicago, Rock Island & Pacific Railway Company. The plaintiff recovered a judgment and the company brings this appeal. Plaintiff Ashlock had been employed by the company as a laborer for some time prior to the injury, and as such had assisted the truckman upon one occasion before the accident in taking out a pair of trucks. But he had assisted the machinists to raise and lower jacks several times before he was hurt, and had brought blocks and had seen the blocks adjusted and the jacks separated. Three or four days before the injury he had been promoted to the position of truckman, and as such it was his duty to take out and repair trucks and replace them under the engines. Upon the morning of the injury he had been ordered by one Van Dinter, who it seems was the foreman under whose orders he worked, to hurry and put a certain engine on the trucks. In obedience to this order, he jacked up the engine. It seems that he put a large timber across under the boiler on top of the frame, and a block of wood between the timbers and boiler. As he was raising it he noticed that the timber was turning and crushing, and he lowered the engine, intending to get another block and put it on top of the jack, under the timber. When he let the engine down so that no weight was resting on the jack, he started to get out from under the engine and in doing so placed his hand on the axle of the truck he was trying to replace. As he did so the block that had been released by the lowering of the engine fell, striking his hand, inflicting the injuries for which recovery is sought.

Plaintiff alleged that the company was negligent in failing to furnish him a safe place to work, and safe tools and appliances

with which to work, and also in failing to furnish him sufficient and competent assistants to enable him to perform the work with safety. It is urged by the appellant company that there was no evidence of negligence to support either allegation. The situation and how the injury happened is told by plaintiff as follows:

"A. * * * In jacking it up, or trying to jack it up to raise it, it was all I could do with the jack to jack it up there, why the timber began to turn, and I just released the jack and let it down to put a block across under the timber on top of the jack. A. Well, I put blocks behind there. I don't remember just—well—it was oak blocks, and wedged behind the cinder hopper door. It was crossways under the boiler. I could not get a block on top of the main center of the big timber, and I put a block behind the little door, and that bolt, and I put a block in front about eighteen or twenty inches long and eight or nine inches wide, and five or six inches thick, and that door would not let it go clear back on the timber so that it would raise all of the timber. It just went partly over the edge of the block, and then I wedged in on top of that block and the cinder hopper door. In jacking it up it crushed that timber, and caused that timber to turn, and I went to get a block to put on top of the jack and raise the whole thing up together, and I was letting the jack down, and in that position it was harder to jack down than up. A. Well, it was something like this (kneeling) raising the lever it took all I could do to raise it. It was harder to do than jacking the engine up, and in doing that way I was down this way [indicating]. I was down this way working at it, hurrying as fast as I could because he told me to rush, and, when I got the jack down, I had to get out to get me another block, and help myself up. * * * I was out at arm's length. I raised my hand up there to get out, and just as I laid my hand up there the block fell on my hand. A. That block resting on the front of the timber and the boiler. The jack was up under the main big timber which was about ten or twelve inches square, and that block was on up on top of the big timber, between that and the boiler. A. Both hands, all I could do, it worked heavily. All I could do to lift it. A. No; it was only resting on top of the timber and a wedge drove on top of the block between that and the boiler, and when I released the jack—of course, the big timber was raising up and was not raising the boiler, and I just released the jack and that let it down, and that block fell out on my hand where I laid my hand."

There is evidence that plaintiff was inexperienced and de-

fendant knew it; that the work he was directed to do ought not to have been expected or required of one man; that plaintiff was sent to do it alone, under hurry up orders; that the work was done under the direction of the foreman. A mere statement of the nature of the thing to be done shows that it was beset with dangers. Upon these facts the jury had a right to find that the defendant was negligent in not exercising that care for the safety of its employee required of it by law. This being true, the only escape for defendant from liability is to take shelter under the rule that, notwithstanding the master has been shown to have been negligent, yet he is not liable, unless it be further shown that his negligence caused the injury. This reduces the whole matter to the single question of "proximate cause." This question was for the jury if there was any evidence, or inferences to be legitimately drawn from the evidence, viewed in the light of the situation and circumstances of the parties and the work, tending to show that defendant's failure to perform its duty produced the injury, and that such a result might have been reasonably anticipated. In *Coalgate Co. v. Hurst,* 25 Okla. 597, 107 Pac. 661, where one of the questions involved was the issue as here, the court says:

"Was the negligence of the master the proximate cause of the intestate's death? This may be established by circumstantial evidence, and is a question of fact for the jury. From all the evidence in the case, may it be fairly inferred that intestate's death was the result of the failure of the defendant to take some precaution which in the exercise of ordinary care it should have taken?"

The opinion of a jury upon questions properly submitted to it, expressed in its verdict will not be overturned, where there is any substantial evidence supporting it. *Burns v. Vaught,* 27 Okla. 711, 113 Pac. 906; *First Nat. Bank v. Arnold,* 28 Okla. 49, 113 Pac. 719; *Hobbs v. Smith,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697; *Ry. Co. v .Hardwick,* 28 Okla. 577, 115 Pac. 471; *Bank v. Lookabaugh,* 28 Okla. 608, 115 Pac. 786; *Davis v. Smith,* 28 Okla. 852, 115 Pac. 1017.

Our inquiry, then, reduces itself to this: Did the antecedent negligence of defendant produce a situation or condition, caus-

ing things to happen subsequently in the usual course of the work, which produced the injury? Or, rather, was the jury justified under the evidence in finding this to be true? The falling block was the immediate cause of the injury, but it would not have fallen if it had been properly placed and had been under the observation of an assistant standing by helping in the work. To do such things was the duty of an assistant. One man could, with great effort, operate the jack, but a helper would have placed the timbers, observed the effect the weight was having on them, and that the operations did not shift them into a position from which they could fall and do damage. The helper would have been on the outside. The plaintiff was crouched or lying prone on the floor under this machinery. He could not so carefully handle or place the timbers, or observe their movements under the strain, from his position. If an assistant had been present, there would have been no necessity for plaintiff to scramble out from under the machinery to get a block. It would have been the duty of the assistant to get it. If plaintiff had not attempted to get out to get the block, he would not have been hurt. Of course, he might have done so even with a helper present, but it would not have been necessary. It cannot be presumed that he would have done so. The failure to have an assistant there, however, made it necessary that he do so. It is more reasonably probable that plaintiff would not have done the unnecessary thing than it is that he would have done it. If he had not done the thing defendant's failure in its duty made it necessary for him to do, he would not have been hurt, in the manner he was. And, again, if an assistant had been present in the reasonable performance of his duty in co-operating with the man under the machinery, who was exhausting all his strength operating the jack, he would not only have had his eye on these blocks, but his hands, if necessary, so that when plaintiff loosened the jack, the heavy block would not have been allowed to remain so insecure that, without even being touched, it could topple and fall. The fall of the block in obedience to natural laws was but an incident resulting in natural sequence from its being allowed to get into a position from which it could fall, and which would most

probably not have happened if a careful helper had been standing by observing the situation.

This may have been the view the jury took of the matter, and it is believed to be tenable and supported by evidence and reasonable inferences drawn therefrom. Therefore the verdict of the·jury, approved by the trial court, ought to stand through an affirmance of the case.

By the Court: It is so ordered.