## WELEETKA COTTON OIL CO. v. BROOK-SHIRE et al.

No. 7750—Opinion Filed June 6, 1917.

Rehearing Denied July 10, 1917.

(166 Pac. 408.)

1. **Evidence — Negligence — Circumstantial Evidence — Sufficiency.**

Plaintiff in a civil case is not required to prove his case beyond a doubt. All that he is required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause. This may be established by circumstantial evidence and the reasonable inference to be drawn therefrom, from which the jury may determine what was the proximate cause of the injury.

2. **Death — Actions — Wrongful Death — Damages.**

The loss which one suffers by the death of a relative may be the loss of something which it was merely reasonably probable he would receive. And where the evidence shows the dependent condition of a surviving parent and the disposition of the deceased son to be such that there is a reasonable expectation that the son would have continued to contribute to the support of the parent, these facts should be considered by the jury in determining the damages sustained by the wrongful death.

(Syllabus by Hooker, C.)

Error from District Court, Okfuskee County; Geo. C. Crump, Judge.

Action by S. C. Brookshire and others against the Weleetka Cotton Oil Company. There was a judgment for plaintiffs and defendant brings error. Affirmed.

J. S. Meyer and Hunter L. Johnson, for plaintiff in error.

N. A. Gibson, J. L. Hull, and Norman & O'Bannon, for defendants in error.

Opinion by HOOKER, C. The defendants in error as the next of kin of James O. Brookshire sued the plaintiff in error to recover damages for his wrongful death, and in the petition filed herein it is alleged that on or about the 5th day of November, 1913, said

James O. Brookshire was in the employ of the plaintiff in error as a common laborer in and about its gin and oil mill at Weleetka, Okla. and that a part of the duties of decedent was to fill certain barrels, situated in the basement of its gin and oil mill, with water from a hydrant on the outside of said building, and that the hydrant from which said water was taken was connected with a line of hose through which the water was conducted to the barrels in the basement of said building and elsewhere about said property; that the said James O. Brookshire was inexperienced and had only been in the employment of the company for a few days prior to the date of his death; that in order to reach the barrels required to be filled with water, and in the due course of his employment, it was necessary for him to place the hose under a running line shaft upon which was fixed a certain pulley, and upon which pulley there was a running belt which operated the huller machine in an adjoining room, and that it was necessary for him to crawl under said running belt or line shaft in order to reach said barrels, and in so doing he was compelled to place himself in an exceedingly dangerous position with reference to said running belt and line shaft; that said belt, pulley, and line shaft were not properly guarded, nor was the seine to which said pulley and belt were connected provided with a loose pulley, nor was said machinery equipped with any contrivance for throwing off the belt from the pulley as by law required, and that the said James O. Brookshire, while exercising proper care for his own safety and in the performance of the duties assigned to him by his employer, was attempting to pass the hose under the line shaft for the purpose of filling said barrels with water, he in some manner, without fault or negligence upon his part, became entangled in said running belt and pulley, the same being at the time unguarded and in dangerous condition, and was thereby wrapped around said line shaft and pulley, and as a result of which he received injuries from which he died; that the plaintiff in error had failed to use ordinary care to furnish the deceased a reasonably safe place in which to work, and in this manner had violated the duties imposed upon the employer, and had likewise failed to safeguard its machinery as required by the statutory law of this state; that on account of this negligent conduct upon the part of the plaintiff in error, the deceased met his death, as a result of which the defendants in error claim to have been damaged, to recover which they insti-

tuted this suit, and a jury, after hearing the evidence, awarded the sum of $2,900. The answer of the defendant was a general denial, contributory negligence, and the assumption of risks.

No one saw the accident, and the negligence alleged by the defendants in error is shown by circumstantial evidence. This evidence thus introduced by the defendants in error satisfied the jury that the injury was caused in the manner stated above.

The plaintiff in error has assigned three reasons why this judgment should be reversed, namely: First, the evidence was insufficient in that it entirely failed to show that the negligence charged in the petition or that any negligence on the part of the defendant was the proximate cause of the injury; second, the evidence is insufficient to sustain the verdict for $2,900, in that there is no evidence of such pecuniary loss to the plaintiff, and that the verdict is excessive; third, the court erred in giving instructions and in refusing to give requested instructions.

It is the settled rule of this state that negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom, and that the proximate cause of an injury may be determined from circumstantial evidence.

In St. L. & S. F. Ry. Co. v. Clampitt, 55 Okla. 686, 154 Pac. 40, this court said:

"The question is not presented that the happening of an accident, in case of an employe, raises a presumption of negligence, and consequently the case of Patton v. T. & P. Ry. Co., 179 U. S. 658 (21 Sup. Ct. 275, 45 L. Ed. 361) * * * does not apply, for while there is no direct evidence showing what caused the deceased to fall, there was evidence showing the condition of the platform, from which the jury might draw inference that it was the condition of the platform that was the proximate cause of the death of plaintiff's intestate. In Waters-Pierce Oil Co. v. Deselms, 18 Okla. 107, 89 Pac. 212, it is held: 'Where an accident has occurred resulting in the death of all the persons immmediately connected therewith, and there is no direct proof as to how the accident occurred, the manner of its occurrence may be shown by circumstantial evidence from which the jury may infer the manner and cause of the accident if the inference is a reasonable, although not a necessary, one. * * * In Hayes v. Williams, 17 Colo. 466, 30 Pac. 352, it is held that what is the proximate cause of an injury, whether it be the original negligence of one party or the intermediate negligence of another party, is ordinarily a question for the jury, to be determined

from the minor associated facts and circumstances. In Booker Tobacco Co. v. Waller, 38 Okla. 47, 131 Pac. 537, it is held: 'It is only when the evidence with all the inferences that the jury could draw from it will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for defendant; and unless the conclusion follows, as matter of law, that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury under proper instructions. * * * Applying the principle decided by these cases, it cannot be said that there was no evidence to go to the jury in this case. * * * In the absence of direct evidence as to what caused the plaintiff's intestate to fall, it was within the province of the jury to consider this evidence, and the inference drawn by them that it was these defects that caused the accident is not an improbable one."

In Reed v. Scott, 50 Okla. 757, 151 Pac. 484, it is held:

"If there is any evidence, including every reasonable inference the jury could have drawn from the same, reasonably tending to support the verdict, this court will not reverse a case for insufficient evidence. A jury may, if they so decide, accept circumstantial upon one side, and reject positive testimony presented on the same point by the other side."

In St. Louis & S. F. R. Co. v. Darnell, 42 Okla. 394, 141 Pac. 785, it is said:

"And this point is still further narrowed to the precise claim that the failure of proof consists in that it does not show that defendant's negligence was the proximate cause of plaintiff's death. It is not contended, and the contention could not be successfully maintained under the evidence, that defendant was not negligent in the maintenance of its railroad at the place where the injury occurred. * * * So our inquiry is reduced to this: Is there a causal connection between defendant's negligence and Darnell's death? If there is not, the verdict is wrong, for it has been often held that, although the defendant may be guilty of negligence, yet to make it liable to a person for injuries received, it must be further shown that the negligence had a causal connection with the injury; that is, that it was the proximate cause of the injury. * * * With this situation of the facts and the law in mind, we have studied the evidence quite carefully, and we are convinced that there is evidence tending to show that defendant's negligence was the underlying cause of the injury; that is to say, that there is evidence which, taken with the rational inferences to be drawn from it, tends to show that but for the condition in which defendant had permitted its track to get plaintiff would not have fallen from the train and thus lost his life. If there was such evidence before the jury,

then its weight and effect was to be determined by them. The question of proximate cause is usually to be determined by the jury. * * * It is true that in determining the precise point of 'proximate cause' we must depend on the circumstances; but this can be shown by circumstantial evidence. Coalgate Co. v. Hurst, 25 Okla. 597, 107 Pac. 661; St. L. & S. F. R. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973; C., R. I. & P. R. Co. v. Ashlock, 36 Okla. 706, 129 Pac. 726; Petroleum Co. v. Wantland, 28 Okla. 481, 114 Pac. 717. In the Rushing Case, supra, this court said: 'A plaintiff in a civil case is not required to prove his case beyond a doubt. All that the plaintiff upon this branch of the case was required to do is to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause.' "

In Coalgate Co. v. Hurst, 25 Okla. 597, 107 Pac. 661, this court said:

"Was the negligence of the master the proximate cause of the intestate's death? This may be established by circumstantial evidence, and is a question of fact for the jury. From all the evidence in the case, may it be fairly inferred that intestate's death was the result of the failure of the defendant to take some precaution which in the exercise of ordinary care it should have taken?"

In C., R. I. & P. R. Co. v. Ashlock, 36 Okla. 706, 120 Pac. 726, it is held:

"Where the negligence complained of in a suit for personal injuries is 'failure of defendant to furnish plaintiff sufficient competent assistants to enable him to perform the work with safety,' the question presented is for the determination of the jury, where there is any evidence, or inferences to be legitimately drawn from the evidence, viewed in the light of the situation and circumstances of the parties and the work, tending to show that defendant failed to perform its duty in this regard, and that such failure produced the injury, and that such a result might have been reasonably anticipated."

In Petroleum Co. v. Wantland, 28 Okla. 481, 114 Pac. 717, it is held:

"In an action by an employe for injuries resulting from an alleged negligence of the master, the burden is upon plaintiff to establish the causal connection between the accident and the alleged negligence of the master; but such fact may be established by circumstantial evidence."

And in the body of the opinion it is said:

"It is ordinarily the province of the jury to determine whether the negligence of the master is the natural and proximate cause of the injury complained of, * * * and, where there is doubt as to which of several

probable causes produced the injury, the cause of the injury is properly a question for the jury. * * * The court will not weigh conflicting evidence or the inferences that may be reasonably drawn therefrom. The burden of proof in an action of this character is primarily upon plaintiffs to prove the negligence charged, and also that the accident from which he received the injury had a causal connection with such negligence charged; and, failing, in either of these essentials, the court is authorized to take the case from the jury. But the causal connection is not required to be established by direct proof. It may be inferred from circumstantial evidence. Negligence in the method of constructing the scaffold has been shown; and there are circumstances surrounding the fall from which reasonable men might infer that the fall was brought about by this defective construction; and we do not think the court erred in refusing to take the case from the jury, or in refusing to grant a new trial upon this ground."

It is asserted here that the evidence is insufficient to sustain the verdict in that there is no evidence of such pecuniary loss to the plaintiffs. The evidence here discloses that the deceased was an adult; that he was unmarried; that he was an affectionate and dutiful son; that he contributed, in a measure, to the support of his parents; and that it was his intention to aid them as much as he could. This court in Shawnee Gas & Electric Co. et al. v. Motesenbocker, 41 Okla. 462, 138 Pac. 790, said:

"In a case where the evidence shows the dependent condition of the surviving parent, and the disposition of the child, and its relation to the parent to be such that there is a reasonable expectation that the child would continue, after its majority, to contribute to the support of the parent, these facts should not be excluded from the jury in determining the damages sustained by the wrongful death."

The evidence here establishes that the parents of the deceased were poor, and that they had reached that age in life when their ability to earn a livelihood was impaired by the ravages of time, and their physical and financial condition was such that they naturally expected some support and assistance from the deceased, and that they would not have hoped for this in vain. In Tiffany on Death by Wrongful Act (2d Ed.) 159, the author says:

"The loss which man suffers by the death of a relative may be the loss of something which he was legally entitled to receive, or may be the loss of something which it was merely reasonably probable he would receive. The first description of loss is principally confined to a husband's loss of his wife's services, a wife's loss of her husband's support and services, a parent's loss of the services of a minor child, and a minor child's loss of the support of a parent. But the statutes do not confine the benefit of the action to husbands, wives, minor children and parents of minor children; and hence a person entitled to the benefit of the action may recover damages for the loss of pecuniary benefit to which he was not legally entitled, but which it is reasonably probable he would have received, except for the death. The second description of loss includes the loss by the beneficiary of any pecuniary benefit which he might reasonably have expected to have received during the lifetime of the deceased by gift, and also the loss of any accumulations which it is probable that the deceased would have had added to his estate had he lived out his natural life, and which the beneficiary would probably have received by inheritance."

The following cases, among others, support the text: Greenwood v. King, 82 Neb. 22, 116 N. W. 1128; Hillebrand v. Standard Biscuit Co., 139 Cal. 236, 73 Pac. 163; Dukeman v. C., C. C. & St. L. R. Co., 237 Ill. 108, 86 N. E. 712; I. & G. N. R. Co. v. Kindred. 57 Tex. 491; Hopper v. Denver R. R. Co., 155 Fed. 277, 84 C. C. A. 21. See, also, Dooley v. Seaboard Air Line R. R. Co., 163 N. C. 454, 79 S. E. 970, L. R. A. 1916E, pp. 185 to 190. In the note to the last-named case there are a number of citations supporting the doctrine announced above. Under these authorities we must hold that the objection of the plaintiff in error is not well taken. The amount of recovery here was a question of fact to be left to the jury. It is not excessive; it is reasonable. See Ft. S. & W. R. R. Co. v. Knott, 60 Okla. 175, 159 Pac. 847.

This cause of action is based upon a violation of a common-law obligation as well as for the violation of a statutory duty. Section 3746, Rev. Laws 1910, provides as follows:

"The owner or person in charge of a factory or any institution where machinery is used shall provide belt shifters or other mechanical contrivances for the purpose of throwing belts on or off pulleys, whenever practicable. All machines shall be provided with loose pulleys and all vats, pans, planers, cogs, gearing, belting, shafting, set screws and machinery of every description shall be properly guarded. No person shall move or make ineffective any safeguard around or attached to any machinery, vats, or pans, while the same are in use, unless for the purpose of immediately making repairs thereto, and such safeguards so removed shall be promptly replaced. If a machine or any part thereof is not properly guarded, the use thereof may be prohibited

by the factory inspector or deputy factory inspector, and notice to that effect shall be attached thereto; such notice shall not be removed until the machine is made safe and the required safeguards are provided; and in the meantime such unsafe or dangerous machinery shall not be used."

And section 3756 thereof provides that any one violating the above requirement is guilty of a misdemeanor. This court in a number of cases, notably Jones v. Oklahoma Planing Mill, 47 Okla. 477, 147 Pac. 999, has held that the failure to comply with the above statute is negligence per se, and that the doctrine of the assumption of risk does not apply in case of an injury to an employe brought about by reason of such failure, and cannot even be pleaded. For a violation of the common-law duty imposed upon the master to exercise ordinary care, to furnish the employe with a reasonably safe place in which to work, the assumption of risk may be pleaded and relied upon by the employer in an action brought to recover damages therefor.

The court in his instructions here fairly submitted the question of the assumption of risk for a violation of the common-law obligation to the jury, and properly refused to present that defense for a violation of the statutory duty. The instructions complained of are not subject to the criticism offered, but, when considered with the entire instructions in the case, clearly present the law to the jury that should govern and control them in their deliberation upon this matter.

The judgment below is in all things affirmed.

By the Court: It is so ordered.