KURN et al. v. YOUNGBLOOD.

No. 31003. Oct. 26, 1943.

Rehearing Denied Nov. 23, 1943.

*142 P. 2d 983.*

M. G. Roberts, of St. Louis, Mo., and Cruce, Satterfield & Grigsby and Ben Franklin, all of Oklahoma City, for plaintiffs in error.

Robert W. Gibbs and Hudson & Hudson, all of Tulsa, for defendant in error.

BAYLESS, J. Hettie Youngblood, the mother of Ambers Austin Youngblood, deceased, obtained a judgment against the trustees for St. Louis & San Francisco Railroad Company, a corporation, for $10,000 damages for the death of her son occasioned by being struck and run over by a train of trustees. The trustees appeal. The first contention presented by trustees is that the evidence is not sufficient to sustain the verdict of the jury and that the trial court should have sustained a demurrer to the evidence and should have sustained trustees' motion for directed verdict.

The evidence adduced by the mother in support of her claim of negligence consisted of the testimony of three eyewitnesses. Two of these witnesses were teen-age boys who were standing on the north side of the trains and tracks, and the other a negro man standing on the south side of the trains and tracks where decedent was killed. The undisputed facts disclose that Madison street runs relatively north and south at this point in the city of Tulsa and was crossed at right angles by the railroad, and, according to the map introduced in evidence, there were seven tracks crossing this street at this point. The street was 41 feet wide east to west and the seven tracks occupied a space roughly 120 feet from north to south. The railroad crossing was slightly elevated above the level of the street north and south of the crossing. The accident happened about 6:15 p. m. on a clear day. The evidence discloses that the decedent approached the crossing from the south, riding a bicycle and moving north along the street. A train consisting of an engine and three cars was moving west on the south track, the one nearest decedent, the engine pulling the cars and being on the west end. At the same time there was a train on the second track north of decedent, as he approached, consisting of a string of cars, the first of which was a flat car followed by a string of boxcars, all pushed by an engine on the west end of the train, and this train was moving toward the east. These witnesses agree that the ends of these two trains cleared each other about the middle of the crossing, that is to say, about 20 feet from either the west or east side of the crossing. These witnesses agree that they heard no bell ringing or whistle sounded by the engineer of either train at the time they entered the crossing. These witnesses were not asked questions designed to elicit information whether the bells or whistles had sounded within the 80-rod limit set by statute, 66 O. S. 1941 § 126. These witnesses all agree that there was a watchman or flagman at the crossing and that he was standing somewhere near the center of the rectangle formed by the crossing, which placed him north of both trains. These parties agree that no flagman or watchman or trainman was south of these moving trains, that is to say between the trains and the decedent, for the purpose of acting as a lookout. The two boys who witnessed the accident from the north agreed that a trainman dropped off one of the boxcars of the train moving east and walked along-

side the train giving signals to the engineer and that the train was moving slowly. These witnesses said that the trainmen could not see decedent, and the negro testified that he did not see this trainman, and all of this is reasonable in view of the fact that one, if not both trains, were between decedent and the trainman. The two boys on the north could see the flagman or watchman, but the negro on the south side said he could not see him. This is reasonable in view of the fact that one or both of the trains were between him and the flagman and the watchman. As stated, the decedent rode up from the south on his bicycle and the negro testified that the decedent passed him and passed between two automobiles standing near the crossing, passed the rear of the train moving west as soon as it had passed far enough west so he could do so, and that he passed almost immediately in front of the train moving east and was struck and killed. The boys standing on the north testified that the first time they saw decedent was when the train on the south track moving west had about cleared the west side of the crossing, at which time they saw decedent come from behind that train and move immediately in front of the train on the second track going east. They testified that decedent was looking straight ahead. They and the negro agree that the decedent turned his bicycle to the right or in a northeasterly direction and that he was struck somewhere between the middle of the crossing and the east side thereof.

The first contention made by defendants is that the verdict is not sustained by sufficient evidence and is contrary to law for that reason. In order to sustain her cause of action the plaintiff pointed out eight factors which she insists presented issues of fact under this record that necessitated submitting the issue of negligence to the jury and she contends that there is enough evidence to sustain all of these factors and the jury's verdict based thereon. She insists that: (1) This was an unusual crossing because of its location, its size,

and surroundings; (2) that it was a dangerous crossing because of its size and proximity to the center of the city and the amount of traffic crossing it; (3) that railroad company failed to maintain sufficient watchmen to meet the obligations imposed upon it by the rule of ordinary care when it switched freight trains in opposite directions and had them pass each other on this crossing; (4) that the operation of these two trains in opposite directions on this crossing had the effect of obscuring the vision of deceased insofar as the eastbound train was concerned and this was clearly negligence because it was the train which killed him; (5) that the trainmen operating the eastbound train did not use ordinary care to warn the public of their intention to move the eastbound train over this crossing; (6) that the act of the crossing watchman in taking his position north of the two trains put him in a position where he could not be seen by the deceased, and therefore his services as a flagman to warn the public offered no protection to those approaching from the south, including the deceased; (7) that all of these acts of negligence enumerated before raised a jury question of whether they were the proximate cause of the death of the deceased; and (8) even if the deceased was charged with contributory negligence, it was a jury question and one with which the courts are not concerned since there was some evidence in the record for the jury to pass upon with respect to this issue. We are of the opinion the plaintiff is correct insofar as point No. 8 is concerned.

Our study of the record and of the briefs filed by the parties leads us to the conclusion that there was sufficient evidence in the record with respect to factors Nos. 1 and 6 to justify submitting the case to the jury to determine whether or not the defendants exercised ordinary care toward the deceased when judged in the light of the evidence in the case. The facts above recited disclose that this was a large crossing, that it was near the business district of the city of Tulsa, that a steady stream of

traffic crossed this crossing throughout the day, and that the eastbound train did not sound its whistle or bell near the crossing or at a time when it was about to pass upon and over the crossing. The jury had a right to take all of of these matters into consideration in judging whether or not the presence of the trains on the crossing was notice to the deceased (Thompson v. Carter, 192 Okla. 579, 137 P. 2d 956), and whether the defendants used ordinary care in providing a flagman or watchman for this crossing and whether the trainman present at the time used ordinary care in endeavoring to warn the traveling public, including the deceased, of the operation of these trains. For these reasons we are of the opinion the first proposition is without merit.

In proposition No. 2 defendants presented considerable argument in their brief with respect to the erroneous statements of law appearing in instructions Nos. 11 and 12, particularly as they were affected by what appeared to be the use of garbled language in No. 12. However, it is made to appear in the plaintiff's brief and in the reply brief of the defendants that the errors of transcription which resulted in instruction No. 12 appearing to be subject to the criticism first made had been corrected. This left the defendants in the position simply to argue that instruction No. 12 places undue emphasis upon that part of instruction No. 11 to the effect that when a railroad company has complied with the statute, such compliance is the least care and caution which a railroad company is required to exercise, and that the jury may determine from the facts and circumstances shown by the evidence that an additional or higher degree of care is required. We see no error in the argument made, since the language of instruction No. 11 is in conformity with the rules of this court (St. Louis & San Francisco Railway Co. v. Thompson, 139 Okla. 142, 281 P. 565); and from all of this we conclude that there is no merit in the second contention.

The third contention raises the question of whether the damages awarded were excessive and given under the influence of passion and prejudice. The jury's verdict was for the sum of $10,-000. The deceased died almost at once and the element of pain and suffering is not involved. The deceased was about 15 years of age and was a husky boy who worked during the school vacations and made $1.50 to $1.75 per day; that he had joined the National Guard for which he was to receive pay of at least $1 per week, and that he lived with his mother and gave her his earnings, she being a widow. Considering all of these factors, we are unable to say that the jury's verdict appears to be excessive.

The judgment appealed from is affirmed.

CORN, C. J., and RILEY, OSBORN, DAVISON, and ARNOLD, JJ., concur. GIBSON, V.C.J., and WELCH, J., dissent. HURST, J., absent.