## PARKHILL TRUCKING CO. et al.
## v. HOPPER.

No. 35345.   March 31, 1953.

Rehearing Denied May 5, 1953.

*256 P. 2d 810.*

Welcome D. Pierson, Oklahoma City, for plaintiffs in error.

Hal Whitten and Whitten & Whitten, Oklahoma City, for defendant in error.

O'NEAL, J. This is an action by Ann Hopper, administratrix of the estate of Bobby Lee Hopper, deceased, against the Parkhill Trucking Company, a Delaware corporation, and James Clyde Harrison, its employee, to recover damages for the alleged wrongful death of Bobby Lee Hopper. Upon the verdict in favor of the administratrix in the sum of $12,500 on plaintiff's first cause of action, and the sum of $975.70 on her second cause of action, as against the defendants, Parkhill Trucking Company, a corporation, and James Clyde Harrison, defendants appeal.

On November 4, 1949, Bobby Lee Hopper, whom we will refer to as "Bobby", was a guest passenger in an automobile being driven in a westerly direction on State Highway 33, at a point approximately five miles east of Coyle, Oklahoma. The defendant's employee, James Clyde Harrison, was operating the truck with a trailer attached in an easterly direction, and as the truck approached the automobile going west, a coupling pin connecting the trailer with the truck became disengaged from the truck, causing the trailer to veer to the left and across the center line of the highway and

come in contact with the approaching automobile in which Bobby was a passenger. The accident resulted in the instant death of Bobby.

The specific act of negligence alleged, which was sustained by the proof, was that there were no safety chains connecting the trailer with the truck, or other safety device to control the trailer in the event the coupling pin became disengaged. Although the defendants by motion for a new trial and by petition in error set forth numerous grounds upon which the verdict and judgment thereon should be set aside, we find that the sole question presented in their brief is that:

"The verdict of the jury is contrary to the instructions of the court, is excessive, is not sustained by the evidence and is contrary to law."

The foregoing proposition is raised under defendants' assignments of error 1, 75, 76, 77, 79 and 80 set out in their petition in error. Defendants' argument is lodged most forcibly in support of assignment in error 79, that the verdict of the jury in the court below is excessive and is the result of bias and prejudice against these plaintiffs in error, defendants below.

Upon the trial the court gave its instruction No. 16, to which defendants objected and saved exception. That instruction reads:

"You are further instructed that if you find your verdict in favor of the plaintiff, it will then become your duty to fix the amount of plaintiff's recovery. Such recovery should be in a sum which would reasonably compensate plaintiff, as the parent and administratrix of the estate of the deceased, for the actual pecuniary loss which plaintiff has sustained by reason of the death of the said Bobby Lee Hopper. You are not at liberty to allow damages for grief, sorrow or anguish of mind resulting from his death. In determining such an amount as you may allow, if any, you may take into consideration the age of the deceased, his normal life expectancy, which under the evidence was 41.53 years, his condition of physical and mental health, his habits, talents and aptitudes, if any, which might have influenced his earnings or affected the value of his services to the plaintiff in the future, either before or after the attainment of his legal majority, and the liklihood (sic) of voluntary contributions which might have been made by him after reaching such legal majority. You may also consider the age of the plaintiff, which under the evidence was 44 years, her condition of health, her station in life, and the sircumstances (sic) surrounding the relationship between the deceased and the plaintiff prior to the death of the deceased. Your verdict, if any, should be reasonable and should not be oppressive or unconscionable, and in no event shall you allow plaintiff to recover more than the sum of $40,000.00 on her first cause of action and the sum of $1075.70 on her second cause of action, and your verdict in no event should exceed the total sum of $41,075.70.

"If you find for the defendants, that is all you need say in your verdict."

Defendants contend that the instruction is exceedingly broad in its language and in some respects is objectionable, and that in any event the verdict of the jury is contrary to the instruction and therefore contrary to law. Whether the instruction is erroneous upon the challenge lodged against it, requires a resume of the record to determine if the facts upon which it is predicated presented a submissible issue for the jury's determination. The jury, under the instruction, was called upon to fix the value of the pecuniary loss to Ann Hopper, mother of Bobby, who lost his life by reason of the negligent act of the defendants. By their verdict they determined the pecuniary loss and damages at $12,500. The present appeal does not challenge the verdict on plaintiff's second cause of action in the sum of $975.70 covering funeral expenses of the deceased.

The statutory law which is here applicable is stated under 23 O.S. 1951 §§ 61 and 97. Sec. 61 of the Act provides:

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."

Sec. 97 of the Act provides:

"Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered."

Equally fair-minded jurors might find it difficult to determine in any given case the amount of damages that would compensate a parent for the pecuniary loss suffered by the death of a child. Equally fair-minded and experienced judges, after a perusal of the record upon appeal, and after a full debate, might find it difficult to evaluate the facts upon which the ultimate conclusion must be based. We know that a decision involving the reasonableness of compensatory damages is one of the most elusive problems to be resolved in any given case. There is no yardstick or norm to guide us and we must consider each case in the concrete for a determination of the ultimate conclusion as to whether the judgment is equitable and just.

From the record we find proof that Bobby was past 20 years of age at the time of his death, and had a life expectancy of 41.53 years, and Ann Hopper, his mother, was 44 years of age and had a life expectancy of 25.27 years as of the time of Bobby's death on November 4, 1949. Five years prior to said date, Bobby's father divorced his mother. She was decreed the custody of the minor children and granted the sum of $60 per month as child support. No child support payments were ever made by the father. The mother worked as a waitress and supplemented her income by keeping roomers and boarders. She had not remarried and she had no other means of support, save and except the financial help she received from Bobby.

After Bobby completed grade school he attended high school. In his junior year he made the Honor society. He was an outstanding football player and swimmer. In 1945, he joined the Merchant Marines, and later was assigned to the United States Army Air Force, in which he served for three years. He was honorably discharged with the rank of sergeant at the age of 20 years. He re-entered high school and completed his senior year studies, and then entered the University of Oklahoma in June, 1949, for the summer term. During his school years he worked at any available jobs he could find to make a few dollars. He worked in grocery stores, drugstores, and as a pin setter in a bowling alley. During vacation periods he worked as a roughneck in the oil fields and was also employed as a construction worker, for which he received 99c per hour. While at the University he received a government allowance of $75 monthly, and earned various sums from jobs procurable. A few days before his death he left the University because he could not meet his living expenses after sending his mother $40 a month out of his governmental allowance. He had a fixed determination to re-enter the University and complete his college work. On numerous occasions he expressed his determination to acquire a home for his mother. It is suggested that statements made by deceased that he intended to provide a home for his mother should not be given any probative value. We think the evidence was competent to show the intentions of the deceased, and also competent as showing the mother's reasonable expectations based upon the intentions of the deceased. Lusk v. Phelps, 71 Okla. 150, 175 P. 756.

The proof discloses that he contributed various amounts of money to his mother, depending upon his current earnings. On one occasion, after working in the oil fields during a school vacation period, he gave his mother $100.

While in the Air Corps he sent his mother $20 to $30 monthly. The evidence discloses that Bobby was a boy of exceptionally good habits, intelligent and very industrious. There was evidence upon which a jury might reasonably conclude that Bobby would continue aiding his mother after his majority.

An examination of instruction No. 16 discloses that the jury was told that plaintiff's recovery was (a) limited to her pecuniary loss; (b) that no recovery could be allowed for grief, sorrow or anguish of mind, because of her son's death; (c) that they should take into consideration the age of the deceased, his life expectancy, his physical and mental health, his habits, talents and aptitudes, which might affect his earnings during his minority, as well as after he attained his majority, had he lived, and also the likelihood of his making any contributions to his mother after his majority; (d) also the age of his mother, her condition of health, station in life and necessities; and (e) that the amounts so determined should be reasonable and should not be oppressive or unconscionable.

In Fike v. Peters (1935) 175 Okla. 334, 52 P. 2d 700, we sustained a judgment in the sum of $10,000 where the evidence disclosed that the parents were in a dependent condition and that the disposition of said child in its relation to said parents was such that there would be a reasonable expectation that said child would have contributed to the support of said parents after arrival at her majority.

We have held that the recovery of pecuniary damages is not limited to the sum of money the deceased would have probably contributed to the parent, except for his death, but that the jury might also take into consideration the pecuniary value of any services or aid which the deceased might have contributed to the parent for his support and maintenance. Kaw Boiler Works v. Frymyer, 100 Okla. 81, 227 P. 453.

Instruction No. 16, here complained of, permitted the jury to consider any voluntary contributions which the deceased might make to his mother after reaching his majority, but, as we have seen, under the Kaw Boiler Works case, this court approved an instruction which permitted the jury to also consider the value of any services or aid which the deceased might have contributed to the parent for his support and maintenance.

The defendants here urge that the case of Capitol Steel & Iron Co. v. Pickeral, 204 Okla. 37, 226 P. 2d 397, supports their contention that under the rule there announced the verdict in the instant case should be vacated and set aside as being excessive. That case does not support them. That action was brought by the mother for the recovery of compensatory damages for the death of her son. The deceased would have reached his majority within a month from the date of his death. The instruction there told the jury that the mother's recovery was limited to a sum that would compensate her for the son's death up to the time of his majority. No objection was taken by either party to this instruction and as no other or further instruction was given covering her claim for either funeral expenses or for conscious pain or suffering, we held that the verdict for $5,636, under the one instruction and proof, could not be sustained. It is quite clear that the instruction could not be sustained on the theory that the services of the deceased to his mother were worth the sum of $5,636 covering the one month prior to his majority. The verdict there was clearly contrary to the court's instruction and on that ground was there vacated.

Furthermore, the defendants' interpretation of the Capitol Steel & Iron Co. case, that no compensatory damages may be allowed beyond the majority of the deceased, is in direct conflict with our decisions.

We agree with the defendants' contention that the cases of National Tank Co. v. Scott, 191 Okla. 613, 130 P. 2d 316, and New et al., Receivers, v. Mc-

Millan, Adm'x, 79 Okla. 70, 191 P. 160, lay down the rule that the recovery by a parent for the wrongful death of a child is limited to the pecuniary loss sustained by the parent.

A reading of instruction No. 16 discloses that the court specifically limited the plaintiff's recovery on the basis of pecuniary loss, and further advised them that they could not allow any damages for grief, sorrow or anguish of mind resulting from her son's death.

In Stanolind Oil & Gas Co. v. Jamison (1950) 204 Okla. 93, 227 P. 2d 404, we sustained a verdict in the sum of $10,000 as a pecuniary loss to a parent for the loss of a child eight years of age. In Kurn et al. v. Youngblood (1943) 193 Okla. 299, 142 P. 2d 983, we sustained a verdict and judgment in the sum of $10,000 for the pecuniary loss of a boy fifteen years of age living with his mother. These cases are illustrative of the wide range of discretion vested in a jury in determining facts involving a recovery for pecuniary loss.

We are of the view, and so hold, that the plaintiff's recovery in the sum of $12,500 as a pecuniary loss and damage, and the sum of $975.70 damages for funeral expenses, are fully sustained by the proof in the record.

The judgment is therefore affirmed.

HALLEY, C.J., and CORN, DAVISON, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur. JOHNSON, J., dissents.