Raymond Rudy VENABLE, F. Gassin, Inc., and Commercial Standard Insurance Company, A Corporation, Plaintiffs in Error,

v.

Eppie BURTON, Administratrix of the Estate of Sue Ann Whitaker, Deceased, Defendant in Error.

No. 38912.

Supreme Court of Oklahoma.

May 31, 1961.

Rehearing Denied July 5, 1961.

Butler, Rinehart & Morrison, Oklahoma City, for plaintiffs in error.

Alpheus Varner, Poteau, and A. James Gordon, McAlester, for defendants in error.

PER CURIAM.

This action was commenced by defendant in error, as plaintiff, against plaintiffs in error, as defendants, to recover damages for the wrongful death of plaintiff's 19-year-old daughter, Sue Ann Whitaker, a sophomore student in Oklahoma University, from being struck and run over by a diesel trailer-truck between 4:00 and 5:00 A.M., January 27, 1957, on Highway No. 9, about 9 miles east of Eufaula, Oklahoma. The parties will hereinafter be referred to as they appeared in the trial court.

Shortly before the deceased was thus instantly killed, she had been riding in the front seat of a Mercury Sedan, owned and driven by plaintiff, with Marvin Gassaway, Mrs. Elizabeth Young, and Mrs. Lovel Sandford, occupying the car's back seat, on a trip from Oklahoma City to Poteau, Oklahoma, the residence of all of the car's occupants. Previously, the same evening, sleet and moisture freezing and adhering to the highway's asphalt, or black-top, surface had made its winding course through the hilly terrain around the scene of the accident extremely hazardous for motoring. As the Mercury proceeded from the west up a long, broken hill, or incline, to a point near there, it crossed the road's medial line into its north driving lane, in order to pass a truck that had stalled, headed in the same direction, and was then stopped with its rear end projecting into the road's south lane. The night was very dark, but reflector lights had been placed in front and behind the truck, apparently by the one or

more persons who had abandoned it there. In attempting to pass this truck, plaintiff's Mercury's wheels started sliding off the pavement, onto the north shoulder of the road, and, when it had progressed approximately 250 feet east of the stalled truck, it stalled, and stopped on the shoulder, with its right wheels on the northern edge of the pavement. After its forward movement had ceased, plaintiff turned off the Mercury's head lights, switched on its parking lights, and its occupant, Gassaway, got out of the car with a flash light to direct highway traffic around it. He was successful in doing this with the first motor vehicles that came that way, one traveling from west to east, and the other from east to west.

The third vehicle approaching the scene was defendant's trailer-truck, loaded with sacks of feed, being transported from Arkansas to Oklahoma City, of a gross weight of 56,000 pounds. The truck was of the cab-over-engine type of International tractor-tandem-trailer variety, with an overall length of 44 or 45 feet, and a width of 8 feet, with 6 wheels on the tractor, and 8 wheels on the trailer. Riding in the truck's cab, with the defendant driver, Raymond Rudy Venable, was one Charles Boyanton, who had been driving a smaller empty truck, not belonging to Venable's employer, when it slid out of control a number of miles east of the scene of the accident, and on the same highway near Stigler, just before defendant's truck reached there. After this occurred, Venable assisted Boyanton in parking his empty truck by the side of the road, and consented to his riding toward Oklahoma City with him as a guest passenger.

As defendants' truck, with Venable and Boyanton in its cab, traveled from the above-mentioned point near Stigler, toward Eufaula, and approached the point where plaintiff's sedan was stalled, it descended a long hill. When it neared plaintiff's stalled car, instead of going south of it, defendant's truck went into the bar ditch on the north side of the highway, striking Miss Whitaker, who had gotten out of plaintiff's car, and was apparently trying to reach a point of safety, off the right-of-way, and out of the path of the on-coming truck.

In plaintiff's petition in this action, she quoted Title 47 O.S.1951 § 121.3(a), making it the duty of drivers of motor vehicles to drive them " * * * at a careful and prudent speed not greater * * * nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing * * *", and forbidding driving at a speed greater than will permit stopping within the assured clear distance ahead. Plaintiff's petition characterized as "negligent" Venable's failure to slow the truck down to a reasonable speed, and have it under control, as he approached the point where plaintiff's car, and the aforementioned truck, were stalled, alleging that, instead of doing this, Venable drove the truck at a rate of speed "high and dangerous under the circumstances", and failed to drive between the two stalled vehicles " * * * as he could have done, had his truck been going at a reasonable speed." In said petition, plaintiff sought damages in the sum of $50,000 on account of being deprived of contributions she alleged Sue Ann would have made to her support, had she lived, and completed her college education, and obtained employment. She prayed for another $1,142 in damages as Sue Ann's funeral expenses.

In their joint answer, adopted by the defendant insurance carrier, Venable and his employer denied that the accident was caused by any negligence on their part, and alleged that plaintiff's decedent was negligent, and placed herself in a position of peril, by walking or running to the location where she was killed; and that, if her negligence did not cause, it contributed to, the accident. Defendants further alleged that the situation which existed on the road, where plaintiff's auto was stalled, confronted defendants with a sudden emergency, in which the truck operator did what any ordinary, reasonably prudent, person would have done under the same circumstances.

At the trial, there was a sharp conflict in the testimony as to the speed of defend-

ants' truck as it approached the scene of the accident. No evidence was introduced as to Sue Ann's funeral expenses, although the court's instruction No. 8 to the jury, excepted to by defendants, authorized inclusion of that item in plaintiff's recovery. After defendants' motion for a directed verdict had been overruled, and the case was submitted to the jury, it returned a general verdict for plaintiff in the amount of $20,000; and judgment was rendered accordingly. After defendants' motion for a new trial was overruled, they perfected the present appeal.

■ Under their first two propositions for reversal, defendants contend that there was no evidence that decedent's death was caused, or contributed to, by negligence on their part; and they charge that, instead, the evidence shows that the accident was proximately caused by negligence of the plaintiff.

Apparently, on the theory that their truck's driver, as he approached the scene of the accident, was confronted with a hazardous situation, not of his own making, to which he reacted in the best way humanly possible, under the circumstances, they say the situation facing him included: (1) lights of a car headed toward him on the wrong side of the road; (2) a flare on the south side of the road; and (3) a man in the center of the road waving a flash light. They infer that Venable did what any prudent driver would have done under the circumstances by steering the truck toward the bar ditch on his right to miss the flare, the man, and the stalled car. They say that Venable could not see beyond the stalled car's lights until he had passed it, and then saw Miss Whitaker only as his truck was leaving the road, which was too late to avoid striking her. Defendants further assert that there is no evidence that Venable was driving at an excessive speed, or in a reckless manner, and that the "physical facts show the heavily laden truck was going very slow as it approached the scene of the accident." This representation is apparently based, at least partially, upon the testimony of the highway patrolman,

A. J. Hayes, whom defendants' brief characterizes as having seen "the physical conditions" at the scene of the accident. Hayes was not an eyewitness. He arrived at the scene of the accident about an hour after it occurred. He testified that he investigated, and made a report on, the accident, based on the situation he found when he arrived. While on the stand, Hayes had a photostatic copy of his report to refer to. Part of his testimony concerning his investigation was that cited, and referred to, by defendants, as follows:

"Q. And as your duty as a Patrolman, based on your experience as such, you did make an estimate of the speed of that truck before the accident, is that right? A. Yes, sir.

"Q. And what is your estimate of the speed of that truck? A. I estimated it at 20 miles an hour.

"Q. Now then, sir, you are also required in your duties to fill in certain check marks concerning the condition of the roadway, the condition of the vehicles, and everything else sir, is that right sir? A. Yes, sir.

"Q. And on the front of this report you are supposed to put in there whether there was any traffic controls—just about everything as well as if you found any improper driving on the part of this truck driver? A. Yes, sir.

"Q. Did you find any improper driving on the part of this truck driver? A. In my estimations I never. * * *."

■ Countering defendants' argument, plaintiff's counsel point out that, by the time the above-quoted witness arrived at the scene of the accident, plaintiff's Mercury had been moved. They quote the testimony of two of the accident's eyewitnesses, plaintiff and her passenger, Mrs. Young, describing the truck's speed, while coming down the hill toward their stalled Mercury as " * * * at least 60 miles an hour * * *", and " * * * at the rate * * * of 50 to 60 miles an hour * * *", respectively. They point out that,

according to the uncontradicted testimony, both of these witnesses were drivers of long experience, and that their competency to accurately estimate the truck's speed has never been denied, except by the implication of defendants' charge that there is no "credible" testimony that Venable was driving at an excessive speed. Venable and Boyanton, defendants' only witnesses, testified, among other things, in substance, that the truck was traveling only 15 or 20 miles per hour when it left the crest of the hill, east of the scene of the accident, and started descending toward it. The plain inference from their testimony is that this same speed was maintained all the way down the hill to the point where the truck left the road and struck the decedent. Their opinions were that Venable, the driver, did only what a reasonably prudent driver of such a truck would have done under the circumstances, and that if he had tried to reduce the truck's speed enough that, under ordinary conditions, he could have controlled it, the truck would, because of its heavy load and the icy roads, have "jack-knifed"; and that the same thing would have occurred had he attempted to turn out of the north driving lane, and gone around plaintiff's car on its south side, rather than turning north and heading into the bar ditch, as he did. We think the questions presented by the evidence were proper ones for the jury's determination. There is no denying the soundness of plaintiff's position that the credibility of the witnesses, and the weight to be given their testimony, were matters for it to determine. City of Shawnee v. Bryant, Okl., 310 P.2d 754. Assuming, on the basis of the physical facts, that it was unlikely, or inherently improbable, that the truck had attained as high a rate of speed as plaintiff's witnesses testified, would not strengthen defendants' argument materially. It was not necessary for the jury to believe that the truck was going as fast as 50 to 60 miles an hour, as it approached the scene of the accident. All it need to have concluded, in order to determine that defendants were negligent, was that the truck was traveling at such rate of speed that it could not be stopped within the assured clear distance ahead, or that its driver was, in one or more other respects, guilty of negligence proximately causing the truck to strike Sue Ann.

Defendants' argument, under its Proposition II, that the accident was caused by plaintiff's negligence has likewise been answered by the verdict and judgment herein. While her contributory negligence was not pleaded, there was evidence introduced which logically pertained to the matter of whether the location of plaintiff's Mercury on the highway created an unnecessary road hazard contributing to the accident, that she might have been able to obviate by moving her car before the truck arrived on the scene. It may be assumed that the jury took such evidence into consideration, under the trial court's instruction on the subject of contributory negligence.

 Under defendants' Proposition IV, they call attention to the aforementioned absence of any evidence as to the cost of decedent's funeral; and, under their Proposition III, they argue that there was no evidence sufficient to establish that plaintiff suffered any pecuniary loss as a result of Sue Ann's death. They point to the uncontradicted fact that, as a Public Welfare Director, plaintiff earned her own livelihood; that Sue Ann was merely a student; and that she had never been employed, or contributed anything to plaintiff's support. They argue that as far as the record shows, or anyone knows, Sue Ann, on or before completion of her education, might have married, or, for conceivable reasons, have never contributed anything to plaintiff's support, even if she had completed a normal span of life. We think the evidence offered on plaintiff's behalf was such that the jury might have reasonably concluded therefrom that, had Sue Ann lived, she would have made needed contributions to her mother's support. See Parkhill Trucking Co. v. Hopper, 208 Okl. 429, 256 P.2d 810; Weleetka Cotton Oil Co. v. Brookshire, 65 Okl. 293, 166 P. 408; Bond v. United Railroads of San Francisco,

159 Cal. 270, 113 P. 366, 48 L.R.A.,N.S., 687, Ann.Cas.1912C, 50; Francis v. Atchison T. & S. F. R. Co., 113 Tex. 202, 253 S.W. 819, 30 A.L.R. 114, and cases therein discussed. But the record furnishes no basis upon which the components of such needed financial assistance could either accurately, or approximately, be measured by members of the jury, even by drawing on their own judgment and experience. Plaintiff testified (referring to her said deceased daughter): "My child hoped to repay me for her college education and she hoped that I could quit work when she finished her school work, and trained herself to be a teacher * * *". Plaintiff's evidence further showed that she had been an employee of the Department Of Public Welfare more than 20 years; that she and her husband own a home and automobile; and that the latter is a retired bookkeeper, "eligible" for social security benefits. The record contains nothing more with reference to the couple's financial resources, or need, however. It does not disclose when plaintiff "could", or would, have "quit work" had Sue Ann lived; and furnishes no inkling as to how much plaintiff's resources at that time, if any, would need to be supplemented, if, as, and when Sue Ann's above-expressed hope had been fulfilled. In view of this failure of proof, the trial court should have sustained defendants' motion for a new trial, even though he regarded as harmless, under the circumstances, the claimed error in his instruction No. 8. For this error, his order overruling said motion is reversed, and the cause is remanded to the trial court with directions to grant a new trial, unless plaintiff, within 10 days of the issuance of the mandate herein, file a remittitur in said court of $10,000, in which event, said court's present judgment will stand affirmed.

BLACKBIRD, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, C. J., concurs in result.

WELCH and HALLEY, JJ., dissent.

WELCH, Justice (dissenting).

Since wrongful death by negligence, and resulting substantial damage to plaintiff were established to the satisfaction of the jury and the trial court, I cannot find any just cause for reducing the recovery from $20,000 to $10,000.

I respectfully dissent.