David Eugene ROGERS, Plaintiff in Error,

v.

Betty WORTHAN, now Roe, Administratrix of the Estate of Harry Wayne Worthan, Deceased, and Charles Junior Raney, Defendants in Error.

No. 42370.

Supreme Court of Oklahoma.

Feb. 10, 1970.

Sanders & McElroy, Tulsa, and Streeter Speakman, Jr., Sapulpa, for plaintiff in error.

Jack B. Sellers, Sapulpa, for defendant in error, Betty Worthan, now Roe; Joe A. Moore, Memphis, Tenn., of counsel on the brief.

LAVENDER, Justice.

This appeal arises in an action for the wrongful death of Harry Wayne Worthan, brought by one of the defendants in error herein, Betty Worthan, now Roe, as administratrix of his estate, for the benefit of herself as the decedent's mother, against the plaintiff in error herein, David Eugene Rogers, and the other defendant in error herein, Charles Junior Raney.

Admittedly, Harry Wayne Worthan, who was 18 years of age at the time, died as the direct result of injuries sustained by him in a head-on collision which occurred at a point about 2.8 miles north of Bristow, Oklahoma, on "old" U.S. Highway 66, between a 1960 Chevrolet automobile, in which he was a passenger and which was being driven by the defendant Rogers in a northerly direction on said highway, and a 1956 Dodge automobile which was being driven by the defendant Raney in a southerly direction on said highway. And, admittedly, the collision occurred about 10:40 o'clock p.m., where the roadway of said highway was two-way blacktop surface.

In addition to those basic facts, the plaintiff alleged (insofar as negligence on the part of the defendants is concerned) that each defendant was driving at approximately 60 miles per hour, and, "in approaching each other the drivers of said vehicles drove, allowed, or permitted their automobiles to cross the center line one or more times and collided headon;" that the collision, and the resulting injuries and death of Harry Wayne Worthan were directly and proximately caused by the combined negligence and carelessness of the defendants in the operation of their automobiles, in that each of the defendants: "(a) Drove at a speed greater than was reasonable under the conditions; (b) Drove at a speed greater than would permit him to stop in the assured clear distance; (c) Drove in excess of the 55 miles per hour maximum night time speed limit; (d) Failed to keep a proper lookout; (e) Failed to keep his vehicle under reasonable and proper control; (f) Changed lanes when it was not safe to do so; (g) Turned or allowed or permitted his automobile to go left across the center line while meeting another vehicle; and (h) Failed to keep to the right and yield one-half of the roadway to the other vehicle;" and that the acts of negligence of the defendants which violated statutes of Oklahoma were negligence per se.

Rogers' answer to the plaintiff's petition alleged that the collision and resultant damages, if any, to the plaintiff were brought about by the sole negligence of the defendant Raney in crossing the center line and driving onto Rogers' side of the road and striking Rogers' car headon. He specifically denied that he was guilty of any negligence, but, in the alternative, alleged that: (a) He was confronted with the sud-

den emergency brought about by Raney's being on the wrong side of the road, and did what an ordinary and prudent person would do in the circumstances; (b) The negligence of Raney was the sole and proximate cause of the accident and resultant damage, if any, to the plaintiff, and such negligence on the part of Raney superseded and insulated Rogers against the negligence, if any, upon the part of Rogers.

The plaintiff's reply to Rogers' answer specifically denied each of those allegations and reiterated her allegation that the accident and situation were brought about by the combined negligence of the defendants Rogers and Raney.

Raney's answer to the plaintiff's petition denied that the accident was caused by his negligence, and alleged that it was due solely to the negligence of Rogers in driving his automobile to the left of the center line of the highway and into Raney's lane of traffic; and that he (Raney) did all that was humanly possible to avoid the accident, by swerving to the left, but, in spite of his efforts to avoid the accident, Rogers ran his car into the one driven by Raney. The plaintiff's reply to Raney's answer specifically denied these allegations, and reiterated her allegation that the accident was caused by the combined negligence of the defendants Rogers and Raney.

The defendant Rogers filed a cross-petition against the defendant Raney for damages allegedly sustained as a result of the collision, alleging that Raney drove to the left of the center line, drove over onto the shoulder and then cut back onto Rogers' side of the road and drove headon into Rogers' car while it was in Rogers' rightful lane of traffic; and that Raney was negligent in the following particulars: (a) In operating an automobile contrary to the laws of the State of Oklahoma by driving left of the center line; (b) In driving on the wrong side of the road; and (c) In operating an automobile when he did not have control of it and was in a physical and mental condition which rendered him incapable of operating an automobile; and that such negligence on the part of the defendant Raney was the sole and proximate cause of the collision and injuries and damages, if any, sustained by Rogers and by the plaintiff.

The defendant Raney filed a cross-petition against the defendant Rogers for damages allegedly resulting from the collision, alleging that, at the time and place pleaded by the plaintiff and Rogers, Rogers drove his automobile in a northwesterly direction into the lane of traffic in which Raney was traveling; and that Rogers' negligence in so driving his automobile was the sole and proximate cause of the collision and the damages claimed by Raney.

Each defendant's answer to the cross-petition of the other defendant specifically denied the other's allegations and reiterated his allegations concerning the other's negligence and that the other's negligence was the sole and proximate cause of the collision and any resultant damages.

Insofar as the pleadings are concerned, the plaintiff blamed the collision and the resulting death of her son upon the combined negligence of the two defendants, in the particulars set forth in her petition; and each of the defendants denied any negligence on his part and claimed that the collision and resulting damages to himself and the plaintiff were the proximate results of the other defendant's sole negligence in the particulars alleged by that pleader, with each defendant also pleading, in effect, that he was confronted with a sudden emergency brought on by the other defendant's negligence and did all that a reasonably prudent person would have done in the same circumstances, and the defendant Rogers further pleading against the plaintiff that, if he were negligent, her decedent was guilty of negligence in failing to remonstrate with him.

All of the issues were submitted to a jury, with the trial resulting in a verdict, and a judgment in accordance therewith, in the principal amount of $25,000.00 in favor of the plaintiff and against both defend-

ants on the plaintiff's cause of action, and a verdict, and a judgment in accordance therewith, against each of the defendants on his cause of action against the other defendant.

Implicit in these verdicts of the jury are findings to the effect that the collision, the death of Harry Wayne Worthan, and any damages sustained by either one of the defendants as well as all damages sustained by the plaintiff, were the direct and proximate result of the combined negligence of the two defendants (which, insofar as may be necessary, includes a finding to the effect that, if either defendant was confronted by a sudden emergency brought on by the negligence of the other defendant, he was guilty of negligence in failing to do what a reasonably prudent person would have done in similar circumstances).

Only the defendant Rogers appeals. In addition to contending that the trial court erred in overruling his motion for a directed verdict in his favor against the defendant Raney with respect to Raney's cross-petition, Rogers contends: (1) That the trial court erred in overruling his motion for a directed judgment against the plaintiff with respect to her petition; (2) That the trial court erred in giving certain instructions to the jury which placed the burden of proof upon the defendant Rogers; and (3) That the jury's verdict in favor of the plaintiff is not supported by the evidence, in that the plaintiff failed to establish any pecuniary loss to herself as the mother of the decedent, and the $25,-000.00 verdict is excessive.

■ Rogers' argument concerning his motions for directed verdicts is bottomed upon the theory that a finding of negligence on his part would, of necessity, have to be based upon a finding that he had driven his car, or had allowed his car or some portion thereof to drift, across the center line of the roadway; that, except for some statements by the defendant Raney when placed on the stand by the plaintiff, all of the evidence was to the effect that the Raney car had been "weaving"

some for a mile or two before reaching the scene of the collision, and, just before the collision, had crossed the center line and its left-hand wheels had gotten onto, or almost onto, the east shoulder of the highway, and then the car swerved to the right and the left front portion thereof crashed into the right-front portion of the Rogers car, and neither the Rogers car nor any portion of it had ever crossed the center line of the roadway prior to the collision; that the only evidence which would indicate that any part of the Rogers car had ever crossed the center line of the highway was the testimony of the defendant Raney to the effect that he was driving southward on the west side of the center line of the roadway; that he did not cross the center line or drive onto or near the east shoulder of the highway; that, shortly before the collision, he noticed the lights of a single oncoming car, glanced into his rear-view mirror to see about a car behind him, and, when he looked back to the roadway, the lights of the on-coming car were immediately in front of him, and the car must have been on the west side of the center line of the roadway, so he swerved to his left in an unsuccessful attempt to avoid a collision.

Rogers argues that this portion of Raney's testimony was nullified and rendered of no probative value whatsoever by his testimony, on cross-examination, to the effect that, after he looked into his rear-view mirror shortly before the collision, he did not see the center line or either boundary of the roadway, and really could not say whether or not any part of the Rogers car was on the west side of the center line of the roadway; and that, therefore, insofar as negligence on his part is concerned, there was nothing to submit to the jury. In support of this conclusion, Rogers cites Downs et al. v. Longfellow Corporation (Okl., 1960), 351 P.2d 999, and Arrington v. Young et al. (Okl., 1961), 366 P.2d 400, wherein it is held:

"Where the plaintiff's case rests upon the testimony of a witness whose further examination so explains or qualifies his

prior testimony as to leave the fact to which he testifies a matter of conjecture, possibility, or guess, his testimony will be construed as a whole to be so lacking in probative force as not to make a case for the jury."

This argument by Rogers is bottomed upon the false premise that he could not be found guilty of any negligence unless the evidence established that his car, or some portion thereof, was on the wrong side of the center line of the roadway immediately before, or at the time of, the collision. It overlooks the fact that he pleaded that the Raney car crossed the center line and traveled partially on, or near, the east shoulder of the highway, and that he was confronted with a sudden emergency caused by such action on the part of Raney and did everything that a reasonably prudent person would have done in a similar situation, and that there was evidence which would support a finding that he was negligent in failing to do what a reasonably prudent person would have done in a similar situation. Rogers himself testified that, when he saw the approaching car start across the center line, he let up on the gas but did not apply his brakes or turn either right or left until the other car had gone off on the east shoulder and swerved back toward him, and then all that he did was to "ease" his car to the left—that is, turn to the left a little bit—when the two cars were five or ten yards apart, and his car was still on the east side of the center line when the collision occurred. His contentions concerning his motions for directed verdicts with respect to the plaintiff's cause of action and Raney's cause of action cannot be sustained.

■■■■ The defendant Rogers contends that, although the trial court, in its instruction No. 5, correctly instructed the jury that "The burden of proof is upon the plaintiff to establish by a preponderance of the evidence all of the material allegations of the petition, and unless the plaintiff has proved these allegations by a preponderance of the evidence, your verdict must be for the defendants," the court erred in giving its instructions Nos. 6, 7, and 9, because they had the effect of shifting such burden of proof to the defendants by requiring them to disprove any such negligence on their parts.

We first note that the defendant Rogers failed to preserve his objections to any instructions in the manner required by 12 O. S.1961 § 578 (prior to its amendment in 1969). Therefore, the instructions will be reviewed only to determine whether they are free from fundamental error.

In order not to lengthen this opinion unduly, we shall not quote any more of the instructions herein. However, we have considered all of the instructions given by the trial court and find that, in instructions numbered 8, 12, 11, 5, 7, 6, 14, 13, 10, and 9, respectively, the trial court fully instructed the jury as to the circumstances, or combinations of circumstances, in which the jury should return a verdict (a) for the plaintiff against both defendants on plaintiff's petition, (b) for the plaintiff against the defendant Rogers on the plaintiff's petition, (c) for the plaintiff against the defendant Raney on the plaintiff's petition, (d) for both defendants on the plaintiff's petition, (e) for the defendant Rogers on the plaintiff's petition, (f) for the defendant Raney on the plaintiff's petition, (g) for the defendant Rogers on his cross-petition against the defendant Raney, (h) for the defendant Raney on Rogers' cross-petition against him, (i) for the defendant Raney on his cross-petition against the defendant Rogers, and (j) for the defendant Rogers on Raney's cross-petition.

Each of those instructions (except No. 5, quoted above) properly required the jury to take into consideration the separate, special defense of "sudden emergency" pleaded by each of the defendants. As to each cause of action in the case, there was at least one instruction—three concerning the plaintiff's cause of action, with one of them involving both defendants, and a separate one as to each of the defendants—which also told the jury that "Should you

find from a preponderance of the evidence that [the defendant or defendants involved in that particular cause of action] was guilty of any of the acts of negligence alleged in [the plaintiff's petition, or the particular defendant's cross petition, as the case may be]," "then your verdict should be for [the plaintiff, or the cross-petitioner, as the case may be]," and at least one related instruction—three concerning the plaintiff's cause of action, with one of them involving both defendants, and a separate one as to each of the defendants—which told the jury that "Should you fail to find by a preponderance of the evidence that [the defendants, or the particular defendant, as the case may be] was guilty of any of the acts of negligence alleged in [the plaintiff's petition, or the particular defendant's cross-petition, as the case may be]," "then your verdict should be for [the defendants, or the defendant, as the case may be]." In other words, there were two, related instructions covering each possible situation—one telling the jury to return a verdict for the plaintiff, or the cross-petitioner involved, if the jury found the defendants, or the defendant named therein, guilty of any of the acts of negligence alleged in the petition, or the cross-petition, as specified therein, and a related instruction telling the jury to return a verdict for the defendants, or the defendant named therein, if the jury failed to find the defendants, or that named defendant, guilty of any of the acts of negligence alleged in the petition, or the cross-petition, as specified therein.

While none of such instructions expressly placed upon any party the burden of proving, or the burden of disproving, the elements involved in the separate, special defence of "sudden emergency" pleaded by each of the defendants, there is nothing in instruction No. 6, 7, or 9 (complained of by the defendant Rogers), or in any of the other instructions, which, either expressly or by inference, would place upon the defendants, or the particular defendant involved in such instruction, the burden of "disproving" the acts of negligence alleged

against them, or him, in the petition or the cross-petition covered by that instruction, or the burden of proving all of the allegations of his answer, a part of which was a general denial, or the burden of overcoming the plaintiff's or the cross-petitioner's evidence against him by a preponderance of the evidence, and no two of such instructions contained inconsistent propositions so that a reviewing court could not determine which one the jury followed and which one the jury rejected, as in the cases cited by the defendant Rogers herein: Eagle-Picher Mining & Smelting Company v. Layton (1938), 182 Okl. 405, 77 P.2d 1137; Firebaugh v. DuBois (1916), 59 Okl. 236, 158 P. 924; City of Woodward v. Bowder (1915), 46 Okl. 505, 149 P. 138; El Kouri v. Toma (1948), 200 Okl. 354, 194 P.2d 872.

We cannot ascribe to any of such instructions the effect claimed by the defendant Rogers, and we find no fundamental error in any of the instructions complained of by him. His attack upon the instructions cannot be sustained.

This action was brought by the administratrix of the estate of the decedent expressly under authority of 12 O.S.1961, § 1053, which, insofar as pertinent herein, provides that:

> "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, * * * if the former might have maintained an action had he lived, against the latter, * * * for an injury for the same act or omission. * * * The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; to be distributed in the same manner as personal property of the deceased."

This decedent was 18 years of age at the time of his death, had never married and there was no surviving spouse or children. He was survived by his father and mother, who had been divorced when he was about two years old, and a half-brother, about

fourteen years of age, who was the child of the decedent's mother's subsequent marriage. The mother had been granted full care, custody and control of the decedent and, after the divorce and until his death, had lived with his mother, and with his mother and step-father after their marriage. Under the law of succession of the State of Oklahoma (84 O.S.1961, § 213), the boy's father and mother were his heirs at law entitled to share in the distribution of his personal property, and were the only possible beneficial plaintiffs in this action brought by the administratrix of the decedent's estate.

However, the evidence disclosed that, during the last five years of his life, the boy had visited with his father only on occasional week-ends, except for one two-week visit, and had never contributed any money, services or other thing of pecuniary value to his father. On this basis, the plaintiff was permitted, at the close of her case-in-chief, to amend her petition to conform to the proof by alleging that the father (who had been named in the original petition as one of the two beneficiaries) had sustained no pecuniary loss by the death of the boy, and the mother became the only beneficial plaintiff.

Relying upon the well-established principle that, in an action for damages for wrongful death under 12 O.S.1961, § 1053, supra, damages are limited to pecuniary benefits lost by one or more of the persons specified in that statute, by reason of the death, the defendant Rogers first contends, concerning the verdict in this case, that a verdict in favor of this plaintiff is not supported by the evidence because there was no evidence of the loss of pecuniary benefits by any such person.

In addition to arguing that the decedent's half-brother (whom the decedent had stated he intended to help through college after he had finished his own college program) was not, in the circumstances, entitled to share in the distribution of the decedent's personal property, so that any reasonable expectation, on his part, of such financial aid did not constitute damages, Rogers argues, in effect (as we understand it), that the mother testified that she had been, and was being, supported by her husband (with a little help from the decedent), so that, since she was not *dependent* upon the decedent for support, her own testimony shows that she did not sustain any loss of pecuniary benefits through the boy's death.

In this latter connection, Rogers relies upon Venable et al. v. Burton, Administratrix (Okl., 1961), 363 P.2d 224, and Oklahoma cases such as Parkhill Trucking Company et al. v. Hopper (1953), 208 Okl. 429, 256 P.2d 810, wherein it is held that, in a wrongful death action for the benefit of a parent, the jury may consider (among other things), the parent's age, health, financial condition and station in life, ability to support himself or herself, and situation with respect to being dependent upon the child for support.

In the Venable case, the reviewing court found that the evidence offered upon behalf of the plaintiff was such that the jury might reasonably have concluded therefrom that, had the child lived, she would have made "needed" contributions to her mother's support, but, as a condition precedent to affirming the trial court's judgment, which had been in the amount of $20,000.00 in accordance with the jury's verdict, required a remittitur of $10,000.00 thereof because the record furnished no basis upon which the components of such "needed" financial assistance could either accurately, or approximately, be measured by members of the jury, even by drawing on their own judgment and experience, in that, while the evidence showed that the child (a girl in college, who had never been employed or contributed anything to her mother who was employed as a Public Welfare Director and whose husband was a retired bookkeeper "eligible" for social security benefits) "hoped" to repay the mother for her college education, and "hoped" that the mother would quit work when the girl had completed her college work and training as a teacher, and also

showed that the mother and her husband owned a home and an automobile, the record showed nothing more concerning the couple's financial resources or need, and gave no inkling as to when the mother could, or would, have quit work had the girl lived, or how much the mother's resources, if any, would, at that time, need to be supplemented, if, as and when the girl's "hopes" had been fulfilled.

We do not understand the Venable case, as well as other cases of similar import in which pecuniary loss was considered with relation to the claimant's age, health, financial condition and degree of dependence upon the decedent, to establish the rule that in the absence of some proof of dependence the claimant may not recover. Or, to state it somewhat differently, that the measure of damage, namely, whether the claimant suffered a pecuniary loss by reason of the death, means the deprivation of financial support upon which the claimant was dependent.

Clearly, the mother in the Venable case had not been dependent, to any extent whatsoever, upon the deceased child, but she was allowed to recover for pecuniary loss to the extent of $10,000.00. Certainly, the parent involved in Lakeview, Inc., et al. v. Davidson (1933), 166 Okl. 171, 26 P. 2d 760, wherein the verdict for $8,000.00 for the death of a five year old son was held not to be excessive, had not been dependent at all upon the child for support. The same thing is true concerning the parent involved in Hale-Halsell Company et al. v. Webb et al. (1939), 184 Okl. 589, 89 P.2d 273, wherein the verdict for $6,000.00 for the death of a four year old daughter was held not to be excessive, and in Stanolind Oil & Gas Company v. Jamison (1950), 204 Okl. 93, 227 P.2d 404, 23 A.L. R.2d 1141, wherein the verdict for $10,000.-00 for the death of an eight year old daughter was held not to be excessive, and in Stevens v. Schickendanz, Administrator (Okl., 1957), 316 P.2d 1111, wherein the verdict for $10,000.00 for the death of a two years and nine months old daughter was held not to be excessive.

In Bagley et al. v. Blue Flame Propane Company, Inc. et al. (Okl., 1966), 418 P.2d 333, it is held, in the first paragraph of the court's syllabus, that:

"In a wrongful death action the pecuniary loss one has suffered is not mitigated by his or her wealth, means of support, financial independence or upon any other benefits received as a result of the death."

It is well settled that an action for damages for wrongful death is purely statutory, and that, in such an action, the damages are limited to the pecuniary benefits lost, through the death, by those specified in the statute. However, such pecuniary loss includes anything of monetary value to the claimant. Okmulgee Gas Company v. Kelly et al. (1924), 105 Okl. 189, 232 P. 428. The pecuniary loss may be of something which it was merely probable the claimant would have received had the decedent lived. Weleetka Cotton Oil Company v. Brookshire (1917), 65 Okl. 293, 166 P. 408. In an action by a parent for the wrongful death of a child, the loss is determined by the sums of money and the acts and services of a pecuniary value which the child probably would have contributed to the parent during the lifetime of the latter except for the wrongful death. Kaw Boiler Works v. Frymyer et al. (1924), 100 Okl. 81, 227 P. 453. The criteria of damages in a wrongful death action by a parent is the reasonable expectancy of pecuniary benefit of which the parent was deprived by the wrongful death. Bagley et al. v. Blue Flame Propane Company, Inc., et al., supra.

Recovery in a wrongful death action is not contingent upon a showing that the claimant had been dependent, to some extent, upon the deceased. Even great wealth would not, of itself, preclude the recovery of damages for any pecuniary benefits which a claimant might, reasonably, have expected to receive if the deceased had lived.

The basic factor controlling recovery in such an action is not whether the claimant

had been dependent upon the deceased for support, but is whether, in the circumstances disclosed by the evidence in the particular case, it can reasonably be said that there was a probability, or a reasonable expectancy on the part of the claimant, that the decedent, except for his death, would have contributed money, aid, services, or anything else that would have a pecuniary value to the claimant.

 Uncontroverted evidence in the present case discloses that the mother never was "too well" and had to have some help around the house, with the housework and yardwork, and in taking care of the decedent's half-brother when he was young; that the decedent had always been a good, obedient, and ambitious boy who gave no trouble to anybody and had always been willing to, and did, take care of the younger boy and transport him to and from school, run errands, and anything that needed to be done around the house or on a farm that the mother and step-father had acquired jointly and owned until a few months before this boy's death; that, about the time that the boy started high school, he started working for others during the summer and, part time, during the school year, and was still doing so at the time of his death; that he would turn his paycheck, along with any unpaid bills that he had, over to his mother and she would pay those bills, give the boy an allowance, and use the balance for general family expenses; that, during the two full calendar years preceding his death, the boy earned from outside employers $794.32 and $1,125.27, respectively, and, during the calendar year in which he died, had earned $337.00; that his employers thought that he was honest, dependable, hard-working, quick to learn, and above average in wanting to learn his job and to do it right, and was very good at meeting the public; that he had never had any serious illness or any physical disability, and, at the time of his death, was eighteen years of age, about six feet tall, weighed about 165 pounds, and was in good health; that his high school grades had been average or above average

(A's, B's and C's, on an A, B, C, D, and F basis); that he had finished high school only a few weeks before his death; that he had planned to go college and to pay all, or part, of his college expenses, when he finished college, to return home and help the family, including helping to send his half-brother (who was about 14 years of age at the time of this boy's death) to college; that the expenses for the boy's funeral and for the installation of a marker for his grave totalled $1,330.82; and that the mother was 36 years of age at the time of the boy's death. It was stipulated that, according to an accepted mortality a table, a male resident of the United States, age 18 but not yet 19, had an average life expectancy of 52.10 years, and a female resident of the United States, age 36 but not yet 37, had an average life expectancy of 40.89 years.

From this evidence, a jury could, reasonably, conclude that there was a probability, or a reasonable expectancy on the part of this mother, that, except for this boy's death, he would have contributed to the mother, money, aid, services and/or things having a pecuniary value to the mother. And, as we see it, any financial aid provided by the decedent toward putting his younger half-brother through college would have reduced the mother's financial burden on that score and, to the extent that such aid could reasonably have been expected, or was probable, such aid would constitute pecuniary benefit lost by the mother through the death of this decedent.

Rogers also argues that the $25,000.00 verdict in favor of the plaintiff in this case is excessive in amount and "obviously" was the result of the jurors' prejudice against his co-defendant Raney's having (according to Raney's testimony) consumed three or four cans of beer around three or four o'clock in the afternoon of the day on which the collision occurred.

In Stevens v. Schickendanz, supra, it is held, in the second paragraph of the court's syllabus, that:

"Where appellant seeks to set aside a verdict on the ground of its alleged ex-

cessiveness, unless it is so plainly outrageously excessive as to suggest passion, prejudice or corruption on the part of the jury, the reviewing court cannot set it aside."

The same rule is stated in a slightly different way in the fourth paragraph of the court's syllabus to Belford et al. v. Allen (1938), 183 Okl. 256, 80 P.2d 671:

"The amount of damages recoverable in a death case is always a question of fact for the jury, and the verdict of the jury on appeal will not be disturbed because of excessiveness unless it appears from the record that the jury was swayed by passion or prejudice against the losing party, and unless the recovery is so large as to shock the sense of justice."

To the same effect, see: Connie's Prescription Shop v. McCann et al. (Okl., 1957), 316 P.2d 823; Sample et al. v. Campbell et al. (Okl., 1957), 305 P.2d 1033; Hazelrigg Trucking Company v. Duvall (Okl., 1953), 261 P.2d 204; Schaff v. Daugherty (1925), 112 Okl. 124, 239 P. 922; and Parkhill Trucking Company et al. v. Hopper, supra.

As a part of his argument that the $25,-000.00 verdict in favor of the plaintiff in the present case for the wrongful death of an 18 year old boy is excessive, the defendant Rogers states that—except for the Parkhill Trucking Company case, in which it was held, in 1953, that the verdict for $12,500.00 was not excessive—a sum of $10,000.00, or less, has been fixed as the reasonable compensation for the pecuniary loss caused by the death of a child, in all of such Oklahoma cases he had found: Fike et al. v. Peters et al. (1935), 175 Okl. 334, 52 P.2d 700 ($10,000.00 for death of 14-year old daughter); Lakeview, Inc., et al. v. Davidson (1933), supra ($8,000.00 for death of 5-year old son); Hale-Halsell Company et al. v. Webb et al. (1939), supra ($6,000.00 for death of 4-year old daughter); Stanolind Oil & Gas Company v. Jamison (1950), supra ($10,000.00 for death of 8-year old daughter); Stevens v. Schickendanz, Administrator (1957), supra ($10,000.00 for death of 2-year old daughter); and Venable et al. v. Burton, Administratrix (1961), supra ($20,000.00 judgment for death of college girl reduced to $10,000.00).

We first note that the Venable case is the only one of those cases in which a reduction in the jury's verdict was ordered, and, in that case, as indicated hereinabove, the reduction was ordered on the ground that there was no evidence from which a jury could determine, even approximately, when, or to what extent, the "needed" financial assistance which the daughter had "hoped" to provide would, or might, be "needed" by the parent—not on the ground that the verdict for $20,000.00 was so plainly outrageously excessive as to suggest passion, prejudice or corruption on the part of the jury, or was so large as to shock the sense of justice. There is nothing in the opinion in the Venable case to suggest that, if evidence on those points had been in the record, the court would have held the $20,000.00 verdict so plainly outrageously excessive as to suggest passion, prejudice or corruption on the part of the jury, or was so large as to shock the sense of justice. And, of course, there is nothing in any of the other opinions relied upon by the defendant Rogers to suggest that the court would have held that a verdict in any larger amount would have been so plainly outrageously excessive as to suggest passion, prejudice or corruption on the part of the jury, or so high as to shock the sense of justice.

Also, as suggested by the plaintiff herein, the courts can, and do, take judicial notice of the decline in the purchasing power of the dollar over the years [Sample et al. v. Campbell et al., supra], and of the fact that, because of the ever-increasing devaluation in the purchasing power of the dollars and the accompanying increase in the dollar value of property and services, it does little, if any, good to attempt to compare the number of dollars involved in the verdict in one case with the number of dollars involved in the verdicts involved in

earlier cases [Hazelrigg Trucking Company v. Duvall, supra; and Connie's Prescription Shop v. McCann et al., supra]. In fact, in these times, those factors must be considered in passing upon the question of whether or not a verdict is excessive [Sample et al. v. Campbell et al., supra].

There is evidence in the present case sufficient to support a substantial verdict in favor of the plaintiff for the benefit of the decedent's mother, and especially in view of the decline in the purchasing power of the dollar since the verdicts in the cases cited by the defendant Rogers in an attempt to show that, by comparison thereto, the verdict in the present case is excessive, we cannot say that the verdict in the amount of $25,000.00 in this case is, in the circumstances shown by the record herein, so plainly outrageously excessive as to suggest passion, prejudice or corruption on the part of the jury, or so large as to shock the sense of justice.

Judgment affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and HODGES, JJ., concur.