574 F.2d 1056
 Lloyd E. MINKER and Virginia Minker, husband and wife and
surviving parents and next of kin of Freddy Gay
Minker, Deceased, Plaintiffs-Appellees,
v.
ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Foreign
Corporation and Paula Jean Carroll Davison,
Defendants-Appellants.
 Nos. 76-1843 and 76-1853.
 United States Court of Appeals,
Tenth Circuit.
 Argued Dec. 14, 1977.
Decided April 28, 1978.
 
 Wm. S. Hall, III, Tulsa, Okl. (Green, Feldman & Hall, Tulsa, Okl., on the brief), for plaintiffs-appellees.
 Ben Franklin, Oklahoma City, Okl., for defendant-appellant St. Louis-San Francisco Ry. Co.
 Joseph A. Sharp, Tulsa, Okl. (Jack M. Thomas, Tulsa, Okl., on the brief), for Paula Jean Carroll Davison.
 Best, Sharp, Thomas & Glass, Tulsa, Okl., Franklin, Harmon & Satterfield, Inc., Oklahoma City, Okl., of counsel; Donald E. Engle, St. Louis, Mo., on the brief, for defendants-appellants.
 Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Lloyd and Virginia Minker, the surviving parents of Freddy Minker, brought a wrongful death action against the St. Louis-San Francisco Railway Company and Paula Jean Davison. Freddy Minker, age eighteen, was killed in a railroad crossing accident between an automobile and a train. At the time of the accident he was a passenger in a car being driven by Paula Jean Davison. The St. Louis-San Francisco Railway Company was the owner and operator of the train which collided with the automobile driven by Davison. Trial of the case to a jury in the United States District Court for the Northern District of Oklahoma resulted in a verdict in favor of the plaintiffs and against the railroad company and Davison in the amount of $31,302.71. The railroad company and Davison appeal the judgment entered against them.
 
 
 2
 On appeal the railroad company urges the following as grounds for reversal: (1) that the plaintiffs were estopped from asserting in federal court their claim for damages for loss of future contributions and services from their deceased son; and (2) that the jury's award of $30,000 for loss of contributions and services was excessive.
 
 
 3
 Davison, in addition to relying on the two matters urged by the railroad company, also seeks reversal on the ground that counsel for the railroad company, in his redirect examination of his own witness, brought out that Davison carried liability insurance. In our view, none of these matters warrants reversal, and we therefore affirm.
 
 
 4
 The estoppel issue requires a further development of background facts. The plaintiffs previously brought an identical action in the state court of Oklahoma against the same two defendants. Trial was to a jury, and the plaintiffs presented their evidence and rested their case. The defendants interposed general and special demurrers to the evidence. The trial court sustained the special demurrers which attacked the sufficiency of the evidence to carry to the jury plaintiffs' claim for damages resulting from the loss of their son's future support and services. The plaintiffs then moved to dismiss their action without prejudice under the provisions of Okl.Stat. tit. 12, § 683 (1971). The trial court granted such motion and entered an order dismissing the plaintiffs' cause of action, without prejudice. The cause having been dismissed, the court did not feel it necessary to rule on the general demurrers.
 
 
 5
 The plaintiffs later instituted the present action in the United States District Court for the Northern District of Oklahoma. Both defendants raised the question of collateral estoppel, claiming that, under the circumstances, the plaintiffs were estopped from further litigating their claim for damages for loss of their son's support and services. The defendants raised this issue by pre-trial motions, by continuing objections throughout the trial of the case, and in their motions for new trial. All were denied. It was the trial court's view that the doctrine of collateral estoppel had no application to the instant case. We agree.
 
 
 6
 Okl.Stat. tit. 12, § 683 (1971) provides, in effect, that a plaintiff may dismiss his cause of action without prejudice to bringing a future action at any time before the final submission of the case to the jury or to the court. The Oklahoma Supreme Court has held that the purpose behind statutes of a similar nature is to preserve for a plaintiff the right to bring a "second" action where the "first" action is disposed of "otherwise than on its merits." City of Tulsa v. Myrick, 184 Okl. 229, 86 P.2d 623, 624 (1939) and Meshek v. Cordes, 164 Okl. 40, 22 P.2d 921 (1933).
 
 
 7
 Counsel for the two defendants apparently concede that under Okl.Stat. tit. 12, § 683 (1971) the plaintiffs, by having their state court action dismissed without prejudice before submission of the case to the jury, had the right to refile their cause of action in a state or federal court. However, counsel emphasize that there is a distinction between res judicata and collateral estoppel, and assert that though the plaintiffs may have the right to file the same cause of action in the federal court, insofar as such relates, for example, to a claim for medical and funeral expense, nevertheless, under the doctrine of collateral estoppel, they are estopped from reasserting their claim for damages for loss of services. The latter, according to counsel, was litigated through to conclusion in the state court proceeding and the plaintiffs are estopped from reasserting it again in the present proceeding. This argument, in our view, is premised on too narrow a reading of Okl.Stat. tit. 12, § 683 (1971) and is not in accord with Oklahoma cases concerning that statute.
 
 
 8
 Sisler v. Jackson, 460 P.2d 903 (Okl.1969) sheds light on the present controversy. There, the plaintiff brought a medical malpractice suit against an orthopedic surgeon, alleging four separate causes of action. After the plaintiff presented her evidence and rested, the defendant demurred to the evidence. The trial court granted the motions as to three of the four claims and, as to the fourth, allowed the plaintiff to reopen to offer additional evidence. Plaintiff then dismissed her action without prejudice to refiling. Plaintiff later filed a second action, alleging the same four causes of action pled in the first complaint, and adding a fifth claim for relief. The defendant in Sisler then asserted that the plaintiff was precluded from bringing the second action because of the disposition of the first action. The trial court rejected this argument and, on appeal, the Oklahoma Supreme Court affirmed, stating:
 
 
 9
 It is observed defendant's argument is predicated upon assumption the trial court indicated an intention to sustain demurrers to all causes of action, and plaintiff dismissed solely to escape a total adverse ruling. The record does not support this position. The trial court stated quite clearly no demurrer was sustained as to the first cause, but plaintiff was permitted to reopen for purposes connected with this cause of action. We are not impressed by argument this proceeding smacks of trickery in trial practice, nor in defendant's claim our case law relating to dismissal under 12 O.S.1961, § 100 and 12 O.S.1961, § 683, should be rewritten explicitly to cover the present situation.
 
 
 10
 The trial court approved plaintiff's dismissal, overruling defendant's objections to this action. In City of Tulsa v. Myrick, 184 Okl. 229, 86 P.2d 623, we approved dismissal after demurrer to the evidence had been sustained, as a failure other than upon the merits. In that case we recognized the reason and object of the statute is to give time for a second action when the first action for any reason is ineffectual for recovery. And, in Tiffany v. Tiffany, 200 Okl. 670, 199 P.2d 606, we stated unequivocally that it is final submission of a case upon both law and fact which is determinative of the question. Numerous decisions support this view. Because the record discloses the cause was not finally submitted, and since the trial court approved plaintiff's dismissal, it is unnecessary to consider the extent of trial court's discretion to permit voluntary dismissal after final submission of a cause. 460 P.2d at 908-09.
 
 
 11
 We think Sisler is comparable to the present case. There, as here, the trial court sustained special demurrers to some, but not all, of the several claims for relief. The plaintiff in Sisler, as did the plaintiffs in the instant case, then dismissed the action without prejudice under Okl.Stat. tit. 12, § 683 (1971). The plaintiff in Sisler then refiled a complaint setting forth all of the claims asserted in her original complaint, including three to which a special demurrer had been previously sustained. In Sisler the Oklahoma Supreme Court held that the trial court had jurisdiction, not only over the general subject matter, but over all of the several claims asserted in connection therewith.
 
 
 12
 Counsel would escape the effect of Sisler by pointing out that nowhere in the Sisler opinion is there mention of "collateral estoppel," the doctrine relied on here. Although true, it is equally true that there is no mention in Sisler of "res judicata," which, according to counsel, is the real basis for the Sisler decision. Recognizing that there is a difference between the doctrines of res judicata and collateral estoppel, nevertheless the critical facts in Sisler parallel quite closely those in the instant case. If we follow the holding in Sisler, we must, and do, reject the present argument of collateral estoppel.
 
 
 13
 In the complaint, the plaintiffs asked for judgment in the amount of $101,302.71 and costs. Breaking down that figure, the plaintiffs alleged that they had paid medical bills and funeral expense in the sum of $1,302.71, and accordingly the remaining sum of $100,000 represented pecuniary loss to them by reason of the death of their son. On trial, the defendants stipulated to medical and funeral expense in the sum of $1,302.71. The jury returned a verdict in the amount of $31,302.71. Subtracting therefrom the stipulated medical and funeral expense, it follows that the jury awarded the plaintiffs $30,000 for the loss of their son's future contributions and services. On appeal, both defendants argue that the award of $30,000 is excessive. We disagree.
 
 
 14
 As we understand it, defendants do not contend that there was insufficient evidence to carry the plaintiffs' claim for loss of services to the jury. Rather, it is their position that, under the proof offered, the award of $30,000 is excessive.
 
 
 15
 In Rogers v. Worthan, 465 P.2d 431 (Okl.1970), the Oklahoma Supreme Court upheld an award of $25,000 for loss of services resulting from the wrongful death of an eighteen-year-old boy. We agree that the evidence relating to pecuniary loss suffered by a parent through the loss of a son may be stronger in Rogers than in the present case, though there are similarities.
 
 
 16
 The instant case is perhaps more akin to Venable v. Burton, 363 P.2d 224 (Okl.1961). In Venable a $20,000 award was reduced by the Oklahoma Supreme Court to $10,000. Venable involved the death of a nineteen-year-old daughter. The instant case involves the death of an eighteen-year-old son. The Minker family resided in a rural community in Oklahoma where the father was engaged in construction work. The mother was a school teacher who was nearing retirement. The deceased son was a bright boy with a good high school scholastic record who was going on to college. He was industrious and quite loyal to his family, working with his father on a part-time basis in construction work, for which he received a wage. The deceased had a somewhat retarded younger brother and he assisted his parents greatly in caring for him.
 
 
 17
 We think the evidence in the instant case relating to the pecuniary loss suffered by a parent in the wrongful death of his child is stronger than that in Venable. Pecuniary loss need not, and usually cannot be, proven with mathematical certainty. The pecuniary loss may be of something which is "merely probable" that the plaintiff would have received had the deceased lived. Rogers v. Worthan, 465 P.2d 431, 438 (Okl.1970). A jury award in a wrongful death case should not be set aside unless it is so plainly, outrageously excessive as to suggest passion, prejudice, or corruption on the jury's part. Stevens v. Schickendanz, 316 P.2d 1111 (Okl.1957). In the instant case we are not in anywise shocked by the jury's award of $30,000. That figure is within the range of the awards rendered in Rogers and Venable, both of which were decided some eight or more years ago. The verdict, in our view, is not excessive, nor are we inclined to order a remittitur.
 
 
 18
 Davison asserts that the judgment should be reversed as to her because counsel for the railroad in his redirect examination of his own witness brought up, obliquely, the subject of liability insurance. Davison's counsel in cross-examination of the witness in question established that the witness had made a written statement shortly after the accident. Davison's counsel submitted the written statement to the witness and asked her to identify her signature. In redirect examination, counsel for the railroad inquired into the circumstances surrounding the giving of the statement and asked her to identify the person to whom she had given her statement. She replied that she had given her statement to "an insurance man that was with the girl in the car." The trial court allowed the answer to stand on the ground that cross-examination had "opened up" a fuller inquiry into the circumstances surrounding the giving of the statement. Under the circumstances, we are inclined to agree. In any event, any error in this regard would in our view be only minor in nature, and not such as to warrant reversal.
 
 
 19
 Judgment affirmed.